## Drexel & Co. *versus* The Commonwealth.

*Act of May 16th* 1861, *relative to brokers' returns, construed.—When the law went into operation.—Duty of brokers after date of the act. —The tax therein imposed is on profits and not on capital, and is not in violation of a license previously granted.*

1. The Act of 16th May 1861, requiring brokers to make return to the auditor-general, of their receipts from commissions, discounts, &c., on or before the first Monday of December then next, and on or before the same day in each year thereafter, for the year ending the 30th of November preceding such annual return, and to pay 3 per cent. thereon, took effect from the date of its passage only; it did not apply to that part of the fiscal year which had passed at the date of enactment, and was not retroactive nor unconstitutional.

2. To avoid liability under the act, it was the duty of brokers to have kept such accounts as would have exhibited their receipts, from the time the law was passed up to the 30th November following; and for failure to keep an account and make return, the penalty imposed by the act for non-compliance with its provisions, was incurred.

3. The tax imposed is upon profits, not capital; and it is both constitutional and expedient, in levying the tax, to take as the measure of taxation, the profits or income of the preceding year.

4. The act is not unconstitutional because in violation of the license granted to defendants by the state to carry on their business as brokers and private bankers; for the tax is not upon the business, but upon the receipts and profits arising therefrom.

ERROR to the Common Pleas of *Dauphin county.*

This was an action brought by the Commonwealth against F.

M., F. A., A. J., and J. W. Drexel, doing business in Philadelphia as Drexel & Co., to recover the penalty of $1000, imposed by the third section of the Act of May 16th 1861 (P. L. 708), for their failure to make the return required by the first section of that act from every stock-broker, bill-broker, exchange-broker, real estate broker, and private banker in the state of Pennsylvania.

This Act of Assembly provided, " That every stock broker, bill broker, exchange broker, real estate broker, and private banker in this Commonwealth shall, on or before the first Monday of December next, and on or before the same day in each year thereafter, make a written return under oath or affirmation, to the Auditor-General of this Commonwealth, in which return he shall exhibit and set forth the full amount of his receipts from commissions, discounts, abatements, allowances, and all other profits arising from his business, during the year ending the thirtieth day of November preceding the date of such annual return, and shall forthwith pay into the state treasury three per centum upon the aggregate amount contained in such return, for the use of the Commonwealth; all revenues derived from this source are hereby appropriated," &c.

The third section imposed a penalty of $1000 for neglecting or refusing to make this return.

At the time of the passage of this law, and for some years previous, the defendants were engaged in business in the city of Philadelphia as stock, bill, and exchange brokers, and private bankers, under the authority of licenses duly issued in the name of the Commonwealth, and for which they had paid the consideration required by law. When called upon by the auditor-general to make a "return of the full amount of their receipts from commissions, discounts, abatements, allowances, and other profits during the year ending November 30th 1861," they sent a protest, in which they submitted certain reasons which rendered it impossible for them to make the requisite return.

Acting under the directions of the 3d section, the auditor-general then proceeded to collect the penalty of $1000, "on an account settled by the accountant officers, as taxes on bank dividends are settled and collected." An appeal was taken from this settlement, in accordance with the provisions of the Act of 30th March 1811, § 11 (5 Sm. 230, Purd. 822, P. L. 20), to the Court of Common Pleas of Dauphin county, accompanied with a specification of objections to said settlement.

It was shown at the trial that Drexel & Co. transacted business as bankers and brokers during the whole of the year 1860 and of 1861; that during the portion of the year preceding the passage of the Act of Assembly, *i. e.*, from May 16th 1861, to November 30th 1861, they received numerous sums of money from

[Drexel & Co. *v.* The Commonwealth.]

commissions, discounts, abatements, allowances, and other profits arising from their business; that no such account of these receipts was kept as would have enabled any one to state the amounts they thus received, either separately or in the aggregate, and without accurate memoranda of the receipts, no one could have possibly made the return required, inasmuch as the nature of the transactions, amounting to several thousand during each working day, precludes the possibility of the memory being able to state such facts, nor could such receipts be ascertained by comparison, or in any other mode accurately at the time mentioned in the act; that a considerable portion of the sums so received during the said preceding part of the year had been lost or expended before the passage of the act, and that there was no account of stock taken in November 1860, and the profits of the year could not be ascertained without an account of stock having been taken at its beginning and end.

On the trial the plaintiff requested the court to charge the jury as follows :—

1. Where a penalty is imposed for the omission to do any act, the whole must be done, and in the manner required by the law, or the penalty is incurred.

2. The Act of May 1861 does not sanction a return of estimated or believed receipts, but requires a positive statement of the amount, and from each of the specified sources from which there were receipts. Nor can the officers of the Commonwealth consent to accept them otherwise than as directed by the Act of Assembly.

3. The various subjects of return mentioned in the Act of May 1861, are to be deemed as one, and the returns of all of them must be obligatory, or there is no obligation to return any, in which case no penalty is incurred.

4. The legislature cannot impose a penalty for the omission to return a state of facts which have previously occurred, if at the time the act was passed the persons named in the act had not the means of learning and stating the said facts as required by the Act of Assembly, and there was no previously existing duty to obtain and return such knowledge.

5. There can be no penalty for not making returns, if it was incompetent for the legislature to compel the returns for a part of the term for which the one return is required by the statute.

6. The word "receipts" in this act means actual realization of the money or property defined, as "commissions," "discounts," &c., and not the nominal amount deducted as such at the time of making the transaction, if a subsequent sale of the article purchased is necessary to ascertain the amount which will remain with the broker as discount or commissions earned by him.

10 WR.—3

[Drexel & Co. *v.* The Commonwealth.]

7. If the jury believe that it was impracticable for the defendants to ascertain and state accurately the sums received from the various sources mentioned in the act during the portion of the year preceding the passage of the act, then, insomuch as no duty existed to ascertain the amount received until the law imposed the duty, no penalty can be imposed for a neglect or omission to make the required return.

8. If any portion of the receipts proposed to be taxed by this law had been expended or lost before the passage of the act, then such receipts, not being in existence at the time the act was adopted, could not be made the subjects of taxation by the act in question.

9. If the receipts thus expended or lost could not be subjected to taxation, then no penalty could be inflicted for not making a return of that which would not be taxable when so returned.

10. Where a license to carry on a trade has been granted for value, and the trade has been carried on, transactions under that license cannot be taxed by a retrospective law, and a penalty imposed for not returning such transactions for taxation is *ex post facto*, and unlawful.

11. Taxation can only be imposed on the person or property, or something in the nature of property, such as a privilege or franchise, but if laid on property not existing at the time (but which has ceased to be at the time the law was passed), it is illegal, and cannot be enforced.

The jury, however, were instructed by the court (PEARSON, J.), that the act was not retroactive in its effect, but that it was the duty of the defendants, from and after it became a law, to keep such accounts as would have enabled them to comply with its requisitions, and to have made a return of their receipts from that date up to the end of the year, terminating November 30th. Under a peremptory direction that the defendants were subject to the penalty, the jury rendered a verdict for the Commonwealth for $1000.

This writ was thereupon sued out by the defendants, for whom the following errors were assigned :—

1. The learned judge who tried the cause erred in deciding that the Act of May 16th 1861, was not retroactive in its effect, and that it did not apply to the transactions occurring in that part of the year ending the 30th day of November, which had already passed at the time of the enactment of the law.

2. In deciding that from the time the law went into effect up to the 30th day of the following November, accounts should have been kept to exhibit the business, and that the failure to do so, and present a statement of the amounts received from May 16th 1861 to November 30th 1861, subjected the defendants to the

penalty of $1000, and that the penalty was properly imposed by the auditor-general.

3. In deciding that it was not impossible to state an account of the business of the year, or of that part of the year between May 16th 1861 and November 30th 1861, between the said 30th of November, which was Saturday, and the first Monday of December.

4. In declining to affirm the points presented by the counsel for the defendants below, and in deciding that the said points were unimportant.

5. In deciding that the defendants were subject to the penalty of $1000, and in instructing the jury that their verdict should be for the Commonwealth for that amount.

*R. C. McMurtrie* and *J. C. Bullitt*, for plaintiffs in error.— The words of the act which bear directly upon the main question are substantially as follows: "That every broker and private banker shall, on or before the first Monday of December next, make a return to the auditor-general of the full amount of the profits arising from his business, during the year ending the thirtieth day of November preceding the date of such return, *i. e.*, during the year ending the thirtieth day of November preceding the first Monday of December next." This language is so precise and explicit that to interpret it to mean anything else than a return of the business of the whole year, which ended November 30th 1861, is not to give any construction—the most forced and artificial even—to the words themselves, but to declare that the intention of the legislature is to be found not in the language employed, but in considerations drawn from a decent respect for its justice and wisdom. Such a method of interpretation cannot be sustained.

Mr. Dwarris remarks, that "recently all the judges have manifested the strongest inclination to adhere more closely in the construction of statutes to the words of the act: Dwarris on Statutes, p. 708. 'Our decisions,' says Lord Tenterden, 'may, perhaps, in this particular case, operate to defeat the object of the statute, but it is better to abide by this consequence than to put upon it a construction not warranted by the words of the act, in order to give effect to what we may suppose to be the intention of the legislature.' In another case, the same distinguished judge says, 'The words may probably go beyond the intention, but if they do, it rests with the legislature to make an alteration; the duty of the court is only to construe and give effect to the provision.' 'It is safer,' said Mr. Justice Ashurst, 'to adopt what the legislature have actually said, than to suppose what they meant to say:'" Dwarris 707.

Many authorities are also cited by the same author, to show

[Drexel & Co. *v.* The Commonwealth.]

that "the same disposition has been shown, and equally salutary doctrines inculcated, with regard to extending statutes by equity." And the very satisfactory reason given for this change in the canons of judicial interpretation, by Mr. Justice Heath, is, that "the legislature is always at hand to supply deficiencies or correct mistakes."

The same doctrine has been adopted by the courts of this country. It will suffice to refer to a few of the many decisions in which the rule has been enforced: United States *v.* Wiltberger, 5 Wheat. 95; 4 Term Rep. 665; 6 Id. 286; Leach's C. L. 73: Dwarris on Statutes 736; U. S. *v.* Wilson, Baldwin 101; U. S. *v.* Ragsdale, 1 Hempstead 497; U. S. *v.* Warner, 4 McLean 463; Putnam *v.* Langley, 11 Pick. 487; Craven *v.* Craven, 2 Dev. Eq. Rep. 334; Ex parte Moore, 7 How. (Miss.) Rep. 668; Alexander *v.* Worthington, 5 Md. 47; Bosley *v.* Maltingley, 14 B. Mon. 89.

Statutes which impose restrictions upon trade or common occupations, or which levy an excise or tax upon them, must be construed strictly: Sewell *v.* Jones, 9 Pick. 412; Mayer *v.* Davis, 6 W. & S. 376; Dwarris 749; Hubbard *v.* Johnston, 3 Taunt. 176.

This act, however, is of a penal character. "All statutes that give costs are to be taken strictly as being a kind of penalty: Cone *v.* Bowles, 1 Salk. 205; but this imposes a penalty in terms, and if interpreted according to the rules which govern the construction of penal statutes, it is clearly unconstitutional. It requires an absolutely perfect and complete return of the plaintiffs' receipts from their business during the five months preceding its enactment, while the evidence showed, as the judge admitted, that it was impossible for them to make any such return. No approximation to the truth, no mere estimate would have sufficed. "When the legislature imposes terms, and prescribes a thing to be done within a certain time, the lapse of even a day is fatal, because no inferior court can admit of any terms but such as directly and precisely satisfy the law: 5 Brown's P. C. 444. See also 2 Hill 373, 374. It being then impossible for the defendants below to make such a return as would have satisfied the terms of the act, they cannot be punished for their failure to make the return. The well-recognised maxims "*Lex neminem ad impossibilia cogit,*" and "*Nemo punitur sine injuria, facto seu defaulta,*" might alone be relied on, but such a statute is plainly within the constitutional prohibition upon *ex post facto* laws and laws impairing the obligation of contracts, nor can it be considered a "law of the land" within the meaning of the ninth section of the ninth article of the constitution.

1. It is an *ex post facto* law within the meaning of the consti-

[Drexel & Co. *v.* The Commonwealth.]

tution : Watson *v.* Mercer, 8 Pet. 110 ; The Cotton Planter, 1 Paine C. C. 23 ; Greenough *v.* Greenough, 1 J. 495 ; Le Couteux *v.* Supervisors, 5 Barb. 250 ; Fletcher *v.* Peck, 2 Cranch 87.

2. This act violates the obligation of the contract between the Commonwealth and the defendants below, contained in their license as brokers and private bankers. Under those licenses they had acquired vested rights which could not be divested by retrospective legislation : Howard *v.* The City of Savannah, R. M. Charlton's Rep. ; Orton *v.* Brown, 6 George (Miss.) 426 ; Benson *v.* The Mayor, 10 Barb. 223. To the same effect are 3 How. 153 ; 16 Id. 369 ; 18 Id. 331 ; 10 Geo. 190.

3. An act which operates retrospectively to divest vested rights is not " a law of the land :" Hoke *v.* Henderson, 4 Dev. 15 ; Houston *v.* Bogle, 10 Ire. Law Rep. 496 ; Berley *v.* Rampacher, 5 Duer 183 ; Coffin *v.* Rich, 45 Maine 507 ; Gordon *v.* Ingraham, 1 Grant 152 ; Southard *v.* Central Railroad Company, 2 Dutch. 13 ; Breed *v.* Cunningham, 2 Cal. 361 ; White *v.* White, 5 Barb. 474 ; 6 Shep. 109 ; Greenough *v.* Greenough, 1 J. 496 ; Reiser *v.* Saving Fund, 3 Wright 137 ; Mitford *v.* Learned, 16 Mass. 217.

While this court has always been vigilant to guard the right of taxation, as one of the rights of sovereignty held by the legislature in trust for the people (Mott *v.* Railroad Company, 6 Casey 9 ; Bank *v.* The City of Pittsburgh, 1 Wright 340), it has never hesitated to restrain the unlawful exercise of the taxing power, and it is submitted that it is both its province and its duty to protect the citizen from such oppressive and unconstitutional legislation as that contained in the act now under consideration : 3 Wright 73 ; 11 Johns. 77 ; 4 Comstock 419.

*W. M. Meredith*, Attorney-General.—The act is not unconstitutional. A law may be retroactive in its character and operation, and may even divest vested rights without being unconstitutional, provided it does not impair the obligation of a contract: Proprietors of the Charles River Bridge *v.* The Proprietors of the Warren Bridge, 11 Pet. Rep. 420.

The interpretation given to the act by the learned judge below is justified both upon authority and principle.

It is conceded that this is a penal statute, and also a statute imposing a tax, and that such statutes are to receive a strict construction against the tax or the penalty, and in favour of the citizen. The authorities collected and placed upon their paper-book by the plaintiffs in error fully establish this. The court below so construed this statute.

The act directs that the first statement or return should be made on the succeeding first Monday of December after its passage, and thereafter the same day in each year. It provides

[Drexel & Co. *v.* The Commonwealth.]

that the annual returns shall be for the whole year, but the first return was not an annual return. A strict construction of the act, and one for the benefit of the parties to be affected by it, would confine the first return to the receipts received between the time of the passage of the act and the 1st December following, and that only the returns thereafter to be made should embrace the whole year.

The reason assigned by the court below for not giving this act a retroactive construction, was "to prevent its working injustice," not to the Commonwealth, but to the defendants. In Re Short's Estate, 4 Harris 67, it is held that the principle that the court should not give an act a retrospective effect unless forced to do so by the stringency of the words, is a sound one where retroaction would work injustice. See also 4 S. & R. 401; Lamberton *et al. v.* Hogan, 2 Barr 26; Robb *v.* Harlin, 7 Id. 293; Mullock *v.* Souder, 5 W. & S. 198; Martindale *v.* Warren, 3 Harris 478. The rule has been to give a retroactive operation on statutes which operate not on the right, but on the remedy; but the courts always refuse a retroactive effect to statutes which would bar an action pending, unless compelled to do otherwise by direct and positive words: Bedford *v.* Shilling, 4 S. & R. 401; Lefever *v.* Witmer, 10 Barr 506; Bolton *v.* Johns, 5 Id. 149. The most universal and effectual way of discovering the true meaning of a law, when the words are dubious, is by considering the spirit of it, or the cause which moved the legislature to enact it. No statute is held to operate retroactively unless its language admits of no other construction: Neff's Appeal, 9 Harris 247.

Statutes take effect from their date, unless it be otherwise provided: Braddee *vs.* Brownfield, 2 W. & S. 279.

Applying these principles to the present case, it is conceived the court could not have given any other construction to this act than that it took effect from the time of its passage only. There are no express words in the act which would warrant a construction giving it a retrospective operation. As construed, it is in favour of the defendants and against the Commonwealth, as it relieves them from the payment of tax on their receipts from November 30th 1860 to May 16th 1861.

The act not being retroactive as to the tax, cannot, in any sense, be *ex post facto.* As the penalty imposed is for the neglect or refusal to do an act required to be done after the passage of the act, it would not be an *ex post facto* law, even if the retroactive construction were put on the first section.

It is, however, contended that this act is unconstitutional, being in violation of a contract between the Commonwealth and the plaintiffs in error, as evidenced in their license as brokers and private bankers; that under said license they acquired

[Drexel & Co. v. The Commonwealth.]

vested rights, of which they could not be divested by any legislation.

This question is already fully disposed of by adjudicated cases. The license to the plaintiffs in error was nothing more than a franchise or privilege to carry on the business of brokers or private bankers. With this privilege the act does not in any way interfere, nor does it in any manner contemplate a violation of any of the rights acquired by means of said license. The tax is not upon the business of the brokers and private bankers, but upon the receipts arising therefrom, as the tax imposed by law upon bank dividends is not a tax upon the business of banking, which is authorized to be carried on by the charter, but upon the profits arising from said business. This point is conclusively disposed of in The Easton Bank v. The Commonwealth, 10 Barr 442.

A bank charter does not carry with it by implication an exemption from taxation. The taxing power is of vital importance, and essential to the existence of the government. The relinquishment of such a power is never to be assumed: Providence Bank v. Billings, 4 Pet. 514, 561; Philadelphia and Wilmington Railroad Co. v. Maryland, 10 How. 376; Easton Bank v. The Commonwealth, 10 Barr 442; 1 Ohio State Rep. 563; 10 How. 416.

It is now settled, on obvious grounds, that the abandonment of the taxing power is not to be presumed where the deliberative purpose of the state to relinquish it does not distinctly appear: 2 Parsons on Contracts 527, n. 9.

Even if the license granted were revoked or cancelled by this act, the act itself, being general, would not thereby be rendered unconstitutional, as the prevailing adjudication of this country favours the rule that general laws revoking or cancelling licenses, whether a fee or premium has been paid for the same or not, are not within the prohibition of the constitution: 2 Parsons on Contracts 538; Phalen v. Virginia, 8 How. 163; 1 Ohio State Rep. 15; 12 Pick. 194; 7 Cowan 349, 585; 24 Am. Jur. 279, 280.

The opinion of the court was delivered, July 1st 1863, by

READ, J.—The Act of 16th May 1861 requires all stock, bill, and exchange brokers and private bankers, on or before the first Monday of December next, and on or before the same day in each year thereafter, to make a written return, under oath or affirmation, to the auditor-general of this Commonwealth, in which return shall be exhibited and set forth the full amount of receipts from commissions, discounts, abatements, allowances, and all other profits arising from the business during the year ending with the thirtieth day of November preceding the date of such

annual return, and shall forthwith pay into the state treasury three per centum on the aggregate amount contained in such return for the use of the Commonwealth. The third section imposes a penalty of $1000 for every neglect or refusal to make such return. Drexel & Co. were stock, bill, and exchange brokers and private bankers, and neglected and refused to make any return in 1861. The court below decided they were liable to the penalty, and gave judgment for the Commonwealth.

This act clearly intended to levy a tax of three per centum on the profits or income of the business, and was not meant to tax capital. Profits must necessarily be the net profits of the business, and the Commonwealth was to receive of them three per cent. It was in fact a tax upon the income of the business in which the defendants were engaged. The English income tax, and the United States income tax are based upon the incomes received in preceding years. The present United States income tax is laid upon the income of 1862, and the Act of Congress of the 5th August 1861 (12 Stat. at Large 309), expressly declares that " the tax herein provided shall be assessed upon the annual income of the persons hereinafter named, for the year next preceding the 1st of January 1862, and the said taxes, when so assessed and made public, shall become a lien upon the property or other sources of said income for the amount of the same, with the interest and other expenses of collection until paid."

It is clearly therefore perfectly constitutional as well as expedient, in levying a tax upon profits or income, to take as the measure of taxation the profits or income of a preceding year. To tax is legal, and to assume as a standard the transactions immediately prior is certainly not unreasonable, particularly when we find it always adopted in exactly similar cases. The tax is graduated upon each individual upon his individual receipts.

The penalty imposed upon all persons refusing or neglecting to give a list as required by the Act of Congress (12 Statutes at Large 235), is $100, whilst our penalty is $1000 upon a similar offence, by a particular class of moneyed operators. The objection that the penalty is *ex post facto* is not founded in fact, for it is imposed for the non-performance of a duty long after the passage of the act.

The court below have confined the operation of the act in the present case to the period between its passage and the 30th of November 1861, during which time it was clearly the duty of the defendants to keep such accounts as might enable them to make the return required by law. As no return of any kind was made, it is unnecessary for us to say whether we might not have been still more lenient as to the time to be comprised in the return, if a return had been actually made, and a good reason

assigned why it could not be made more explicit, and in strict conformity to the requirement of the law.

The charge of the learned judge contains so full a discussion of the subject, that we have not thought it necessary to go over the same ground, and as we agree with him,

The judgment is affirmed.