## GARRETT FREIGHT LINES, Inc., v. STATE TAX COMMISSION et al.

No. 6497. Decided March 29, 1943. (135 P. 2d 523.)

*Louis H. Callister, Ned Warnock,* and *E. R. Callister, Jr.,* all of Salt Lake City, for appellant.

*David T. Lewis, Grant A. Brown, Marcellus K. Snow* and *Wayne L. Christoffersen,* all of Salt Lake City, for respondents.

HOYT, District Judge.

In this case the appellant (plaintiff) seeks to recover certain taxes paid under protest under a provision of Section 3, Chapter 53, Laws of Utah 1941, which read as follows:

"An excise tax is imposed at the rate of four cents per gallon on the use of fuel by any user thereof on and after January 1, 1941."

The word "fuel" as defined in the act includes Diesel motor fuel and the taxes sought to be recovered were paid on account of such motor fuel used by appellant prior to the date on which the legislative act became a law. The act was passed by the Legislature February 13, 1941, and became effective May 13, 1941.

Appellant asserts that that part of the act which purports to impose a tax upon the use of Diesel fuel used prior to the effective date of the act is invalid, in that it is retroactive in effect and deprives the taxpayer of his property without due process of law in violation of Section 7 of Article 1 of the State Constitution and the 14th amendment to the Constitution of the United States.

Counsel for appellant bases his case chiefly on the contention that the tax on use of Diesel fuel imposed an entirely new tax and created a new class of taxpayer; that in making the tax apply to use of Diesel fuel during a period of four and one-half months prior to the date the law went into effect amounts to levying a tax upon a transaction already

consummated and therefore constitutes a taking of property without due process of law.

If the tax should be looked upon as a fee or charge for a permit or license to do an act or carry on a business then it might be considered arbitrary and unjust to require a person to pay a fee for having done that which he at the time of the act had a right to do without a fee. But this tax imposed upon users of Diesel fuel cannot be considered a fee for a license or permit. The statute which calls for payment of this tax is a revenue measure which in effect says that the Legislature finds it reasonable to require, and therefore does require, that all those who have used Diesel fuel during the period from January 1, 1941, to date of passage of the act, or who thereafter use such fuel, shall be taxed for support of the state government, and that the amount of the tax shall be computed upon the amount of Diesel fuel used by them subsequently to January 1, 1941. The fact that the date decided upon was six weeks prior to the final passage of the bill, or four and one-half months prior to the date the act became law does not, for any reason we can perceive, make the tax arbitrary, capricious or purely fanciful so as to offend against the due process clause. The Legislature has broad power and discretion in determining classes of persons to be taxed. To include those persons or corporations who have used Diesel fuel during a recent period in a class with those who subsequently use such fuel, does not appear to be arbitrary or capricious. In imposing a tax upon some particular class or group of persons, the Legislature should not act arbitrarily and without consideration of ability to pay or benefits of government received. But unless the classification adopted by the Legislature is clearly and unmistakably arbitrary or capricious, and unjust, the enactment must be upheld. The power of the courts under the Constitution is not a veto power. With the wisdom of legislative policy the courts are not concerned. The duty of the court, when complaint is made of an act of the Legislature, is to determine whether the people have given to the Legis-

lature the power to adopt the statute. In the matter of raising revenue for the government the court cannot set up its judgment again the Legislative judgment in determining who shall be required to contribute.

"The taxing power of the state is lodged absolutely in the legislature, and, as the responsibility of enacting laws devolves exclusively upon that branch of the government, whether the right of taxation has been exercised justly or unjustly, wisely or unwisely, it is not for the judiciary to inquire. That is a matter between the people and their representatives. So, even though in some instances there be an abuse of the taxing power. Unless such laws are in conflict with some constitutional provision, either expressly or by implication, the courts have no authority to prevent their execution. On this subject Mr. Chief Justice Marshall in *McCulloch* v. [*State of*] *Maryland*, 4 Wheat. 316, 428 [4 L. Ed. 579], says: 'The power of taxing the people and their property is essential to the very existence of government, and may be legitimately exercised on the objects to which it is applicable, to the utmost extent to which the government may choose to carry it. The only security against the abuse of this power is found in the structure of the government itself. In imposing a tax, the legislature acts upon its constitutents. This is, in general, a sufficient security against erroneous and oppressive taxation.

" 'The people of a state therefore give to their government a right of taxing themselves and their property, and, as the exigencies of government cannot be limited, they prescribe no limits to the exercise of this right, resting confidently on the interest of the legislator, and on the influence of the constituents over their representative, to guard them against its abuse.'

"And again, he speaks of it as unfit for the judicial department to inquire 'what degree of taxation is the legitimate use, and what degree may amount to the abuse of the power.' In [*Providence*] *Bank* v. *Billings*, 4 Pet. 514, 562, [7 L. Ed. 939], the same eminent jurist observes: 'The power of legislation, and consequently of taxation, operates on all the persons and property belonging to the body politic. This is an original principle, which has its foundation in society itself. It is granted by all for the benefit of all. It resides in the government as part of itself, and need not be reserved where property of any description, or the right to use it in any manner, is granted to individuals or corporate bodies. However absolute the right of an individual may be, it is still in the nature of that right that it must bear a portion of the public burdens; and that portion must be determined by the legislature. This vital power may be abused, but the interest, wisdom, and justice of the representative body, and its rela-

tions with its constituents, furnish the only security against unjust and excessive taxation, as well as against unwise legislation.'

"Accepting this as sound doctrine, as we safely may, would not the judicial department itself be guilty of transcending its constitutional power were it to inquire into the expediency, wisdom, or justice of the legislation in question in this case?" Opinion by Bartch, C. J., in *Kimball* v. *Grantsville City et al.,* 19 Utah 368, 384, 57 P. 1, 5, 45 L. R. A. 628.

It is well settled that a tax does not necessarily violate the Federal Constitution merely because it contain retroactive features. *Milliken* v. *United States,* 283 U. S. 15, 21, 51 S. Ct. 324, 75 L. Ed. 809; *Billings* v. *United States* 232 U. S. 261, 34 S. Ct. 421, 58 L. Ed. 596; *Welch* v. *Henry,* 305 U. S. 134, 59 S. Ct. 121, 125, 83 L. Ed. 87, 118 A.L.R. 1142. The last mentioned case involved a statute, adopted March 27, 1935, by the Legislature of Wisconsin, Laws 1935, c. 15, which imposed a tax on corporate dividends received in the year 1933 at rates different from those applicable in that year to other types of income. Mr. Justice Stone, in writing the majority opinion, discusses the question of constitutionality as follows:

"The objection chiefly urged to the taxing statute is that it is a denial of due process of law because in 1935 it imposed a tax on income received in 1933. But a tax is not necessarily unconstitutional because retroactive. *Milliken* v. *United States,* 283 U. S. 15, 21, 51 S. Ct. 324, 326, 75 L. Ed. 809, and cases cited. Taxation is neither a penalty imposed on the taxpayer nor a liability which he assumes by contract. It is but a way of apportioning the cost of government among those who in some measure are privileged to enjoy its benefits and must bear its burdens.

"Since no citizen enjoys immunity from that burden, its retroactive imposition does not necessarily infringe due process, and to challenge the present tax it is not enough to point out that the taxable event, the receipt of income, antedated the statute.

"In the cases in which this Court has held invalid the taxation of gifts made and completely vested before the enactment of the taxing statute, decision was rested on the ground that the nature or amount of the tax could not reasonably have been anticipated by the taxpayer at the time of the particular voluntary act which the statute later made the taxable event. *Nichols* v. *Coolidge,* 274 U. S. 531, 542, 47

S. Ct. 710, 713, 71 L. Ed. 1184, 52 A. L. R. 1081; *Untermyer* v. *Anderson,* 276 U. S. 440, 445, 48 S. Ct. 353, 354, 72 L. Ed. 645 (citing *Blodgett* v. *Holden,* 275 U. S. 142, 147, 48 S. Ct. 105, 106, 72 L. Ed. 206) ; *Coolidge* v. *Long,* 282 U. S. 582, 51 S. Ct. 306, 75 L. Ed. 562. Since, in each of these cases, the donor might freely have chosen to give or not to give, the taxation, after the choice was made, of a gift which he might well have refrained from making had he anticipated the tax, was thought to be so arbitrary and oppressive as to be a denial of due process. But there are other forms of taxation whose retroactive imposition cannot be said to be similarly offensive, because their incidence is not on the voluntary act of the taxpayer. And even a retroactive gift tax has been held valid where the donor was forewarned by the statute books of the possibility of such a levy, *Milliken* v. *United State,* supra. In each case it is necessary to consider the nature of the tax and the circumstances in which it is laid before it can be said that its retroactive application is so harsh and oppressive as to transgress the constitutional limitation.

"Property taxes and benefit assessments of real estate, retroactively applied, are not open to the objection successfully urged in the gift cases. See *Phillip Wagner, Inc.,* v. *Leser, Judge of the Appeal Tax Court of Baltimore,* 239 U. S. 207, 36 S. Ct. 66, 60 L. Ed. 230; *City of Seattle* v. *Kelleher,* 195 U. S. 351, 25 S. Ct. 44, 49 L. Ed. 232; compare *Citizens' National Bank* v. *Kentucky,* 217 U. S. 443, 454, 30 S. Ct. 532, 535, 54 L. Ed. 832; *Billings* v. *United States,* 232 U. S. 261, 282 34 S. Ct. 421, 424, 58 L. Ed. 596. Similarly, a tax on the receipt of income is not comparable to a gift tax."

Neither the Federal Constitution nor the Utah Constitution has any provision in terms prohibiting retroactive legislation—excepting that which forbids the enactment of ex post facto laws. Const. U. S. art. 1, § 10, cl. 1; Const. Utah art. 1, § 18. That clause relates to criminal or penal matters and does not affect legislation such as the statute here involved. *Calder* v. *Bull,* 3 Dall. 386, 390, 1 L. Ed. 648. 1 Kent Commentaries 409; 3 Story on the Constitution 212; 16 C. J. S. Constitutional Law, § 435, p. 886.

Some of the states have constitutional provisions which expressly forbid retrospective legislation but in the absence of such provisions in the Constitution a tax measure with a retroactive feature such as the provision here attacked is not invalid. *Welch* v. *Henry,* supra. *State* v. *Bell,* 61

N. C. 76; *Roth Drug* v. *Johnson*, 13 Cal. App. 2d 720, 57 P. 2d 1022; *Appeal of Van Dyke*, 217 Wis. 528, 259 N. W. 700, 98 A. L. R. 1332; *Louisville Provision Co.* v. *Glenn*, D. C., 18F. Supp. 423.

"If the Constitution does not expressly forbid retrospective legislation, the Legislature may impose a business tax upon business done prior to the time the statute was adopted." 2 Cooley, Taxation, 4th. Ed., Sec. 522.

"In apportioning the tax between individuals, there is no valid objection to making it on consideration of a state of things that may now have come to an end; as where a tax is imposed on the extent of one's business for the preceding year instead of upon an estimate of the business for the year to come." Ib. Sec. 523, citing *People* v. *Gold Co.*, 92 N. Y. 383; *Drexel* v. *Commonwealth*, 46 Pa. 31.

Although basing its case upon the due process clause, appellant does not show wherein the tax constitutes any arbitrary and oppressive discrimination except to assert that a tax based upon a transaction consummated prior to passage of the act amounts to a taking of property without due process. It has many times been questioned whether the due process clause constitutes any limitation upon the taxing power. In this connection we quote from Mr. Justice Sutherland of the United States Supreme Court in an opinion upholding the validity of a statute of the State of Washington levying a tax upon the sale of oleomargarine:

"Except in rare and special instances, the due process of law clause contained in the Fifth Amendment is not a limitation upon the taxing power conferred upon Congress by the Constitution. * * * And no reason exists for applying a different rule against a state in the case of the Fourteenth Amendment. * * * That clause is applicable to a taxing statute such as the one here assailed only if the act be so arbitrary as to compel the conclusion that it does not involve an exertion of the taxing power, but constitutes, in substance and effect, the direct exertion of a different and forbidden power, as, for example, the confiscation of property. * * * Collateral purposes or motives of a Legislature in levying a tax of a kind within the reach of its lawful power are matters beyond the scope of judicial inquiry. * * * Nor may a tax within the lawful power of a state be judicially stricken down under the due process clause simply because

its enforcement may or will result in restricting or even destroying particular occupations or businesses, \* \* \* unless, indeed, as already indicated, its necessary interpretation and effect be such as plainly to demonstrate that the form of taxation was adopted as a mere disguise, under which there was exercised, in reality, another and different power denied by the Federal Constitution to the state. *A. Magnano Co.* v. *Hamilton*, 292 U. S. 40, 54 S. Ct. 599, 601, 78 L. Ed. 1109.

In this case it should be noted that the State of Utah has for many years had a tax upon the sale or use of gasoline. For several years this tax on sale or use of gasoline has been at the rate of four cents a gallon—the same rate levied by this act on use of Diesel fuel. Until the passage of the act here involved, the user of Diesel fuel enjoyed immunity from such a tax. The two types of motor fuel are used for similar purposes, and therefore it may be said that users of Diesel fuel had escaped carrying their share of the State's tax burden and that they might easily have foreseen the likelihood of a tax being levied at any session of the Legislature upon the use of such fuel. An attempt was made by the Legislature in 1935 to equalize the burden between the users of gasoline and users of Diesel fuel by levying a tax upon users of vehicles propelled by Diesel fuel, based upon the number of miles operated upon the highways. This act (Chapter 46, Laws 1935) was held unconstitutional for reasons foreign to the issues in this case. *Carter et al.* v. *State Tax Commission*, 98 Utah 96, 96 P. 2d 727, 126 A. L. R. 1042. The Legislature of 1941, in enacting the statute whose validity is attacked in this case, cannot therefore be said to have been arbitrary, or prompted by whim or caprice, in requiring users of Diesel fuel who had used such fuel during a period of a few months prior to the date the act became a law to pay a tax based upon the amount of fuel used during that period. This merely served to equalize in part the tax burden between those who had used gasoline, and paid a tax for such use, and those who had used Diesel fuel and had escaped taxation. There is no merit to the contention made by counsel for

appellant that the gasoline tax is a tax paid by the distributor while the tax on Diesel fuel is a tax paid by the user. The court cannot be blind to the fact that though the distributor of gasoline is required to pay the tax he collects it from the user.

The appellant's case is based upon the assumption that the Diesel fuel tax is a tax upon use and not upon the user, and that it is not within the power of the Legislature to levy a tax upon a use already consummated. This, we think, puts too much emphasis on the theory that taxes are laid upon property, privileges, or transactions and not upon persons. We need to be reminded that a tax is an enforced contribution of money or other property by authority of a sovereign state from *persons or property* within its jurisdiction for the purpose of defraying the public expenses. It is true that it is usually said that taxes are levied upon property, privileges, occupations or transactions. But in each case the payers of the tax are persons. Confusion results when this fact is overlooked.

"Taxation is eminently practical, and is in fact brought to every man's door; and, for the purpose of deciding upon its validity, a tax should be regarded in its actual, practical results, rather than with reference to those theoretical or abstract ideas whose correctness is the subject of dispute and contradiction among those who are experts in the science of political economy." *Nichol* v. *Ames,* 173 U. S. 509, 19 S. Ct. 522, 525, 43 L. Ed. 786; *Knowlton* v. *Moore,* 178 U. S. 41, 109, 20 S. Ct. 747, 764, 44 L. Ed. 969.

In the present case it may be argued that the tax on use of Diesel fuel used after the passage of the act, is a tax on the privilege of using such fuel, but as to fuel used prior to the act it is a tax upon the person who used it. If this should be granted, does it make the act invalid as to the latter?

The answer depends upon the limitations fixed in the State Constitution. If there is no express or implied denial of the power, then the tax may be laid. The following provisions of the State Constitution must be considered.

"All tangible property in the State, not exempt under the laws of the United States, or under this constitution, shall be taxed in proportion to its value, to be ascertained as provided by law." Art. XIII, Sec. 2.

"The Legislature shall provide by law a uniform and equal rate of assessment and taxation on all tangible property in the State, according to its value in money, and shall prescribe by law such regulations as shall secure a just valuation for taxation of such property, so that every person and corporation shall pay a tax in proportion to the value of his, her, or its tangible property, provided that the Legislature may determine the manner and extent of taxing transient live stock and live stock being fed for slaughter to be used for human consumption. Intangible property may be exempted from taxation as property or it may be taxed in such manner and to such extent as the Legislature may provide. Provided that if intangible property be taxed as property the rate thereof shall not exceed five mills on each dollar of valuation. When exempted from taxation as property, the taxable income therefrom shall be taxed under any tax based on incomes, but when taxed by the State of Utah as property, the income therefrom shall not also be taxed." Art. XIII, Sec. 3.

"All corporations or persons in this State, or doing business herein, shall be subject to taxation for State, County, School, Municipal or other purposes, on the real and personal property owned or used by them within the Territorial limits of the authority levying the tax." Art. XIII, Sec. 10.

"All laws of a general nature shall have uniform operation." Art. I, Sec. 24.

"Nothing in this Constitution shall be construed to prevent the Legislature from providing a stamp tax, or a tax based on income, occupation, licenses or franchises." Art. XIII, Sec. 12.

"No person shall be deprived of life, liberty or property, without due process of law." Art. I, Sec. 7.

By section 26 of Article VI the Legislature is prohibited from enacting any private or special law relating to assessing or collecting taxes. Appellant has not contended that the act involved here contravenes any of these provisions except the due process clause. Appellant's case therefore rests upon the question whether or not there has been any unjust discrimination or such an arbitrary and oppressive exaction made as to violate that provision. We do not find that the rate imposed is arbitrary or confiscatory. The same rate per gallon is levied as that applied to use of

gasoline. There is no evidence of unreasonable discrimination or legislative intent to oppress, harass or destroy. On the contrary, it appears evident that the object of the Legislature was to require payment of taxes for a period during which users of Diesel fuel had enjoyed immunity from a tax being paid by others of a similar class. In this connection the Legislature may have considered that it had an authoritative precedent for making this tax retroactive in the example of Congress in levying the so-called "Windfall Tax" (Act of June 22, 1936, § 501, 26 U. S. C. A. Int. Rev. Code, § 700 et seq.), by which Congress required payment of eighty per cent of income received by processors who had been benefited or "unjustly enriched" by reason of the invalidation of the Agricultural Adjustment Act. Also, the courts have, as shown by cases cited in *Welch* v. *Henry* (supra), upheld legislation levying taxes retroactively upon property. So too, an excise tax was levied by Congress, Act of September 8, 1916, 39 Stat. 781, upon the entire profits received or accrued *during said year* from the sale or disposition of munitions manufactured in the United States. The validity of this act was recognized in *Carbon Steel Co.* v. *Lewellyn,* 251 U. S. 501, 40 S. Ct. 283, 64 L. Ed. 375, and in *United States* v. *Anderson,* 269 U. S. 422, 46 S. Ct. 131, 70 L. Ed. 347.

Appellant concedes that income taxes may be based upon income earned within a reasonable period prior to the enactment of the taxing act. This is well established by decisions of the United States Supreme Court and many state courts. *Stockdale* v. *Insurance Companies,* 20 Wall. 323, 22 L. Ed. 348; *Brushaber* v. *Union Pac. R. Co.,* 240 U. S. 1, 36 S. Ct. 236, 60 L. Ed. 493, L. R. A. 1917D, 414, Ann. Cas. 1917B, 713; *United States* v. *Hudson,* 299 U. S. 498, 57 S. Ct. 309, 81 L. Ed. 370. *Welch* v. *Henry,* supra; *Smith* v. *Dirckx,* 283 Mo. 188, 223 S. W. 104, 11 A. L. R. 518. But appellant contends that the tax herein questioned involves a different principle than a tax based upon income earned prior to passage of the act.

An income tax has been held by some courts to be a tax upon the recipient of the income. See 61 C. J. 1560, note 34, and cases there cited. This is obviously a logical view to take. Likewise it is reasonable to look upon a use tax as a tax upon the user. Can it be said then that a tax based upon income received prior to the enactment of the tax law is not arbitrary or discriminatory but a tax based upon the amount of a commodity such as motor fuel used during a period recently antedating the act is so arbitrary and discriminatory as to amount to a taking of property without due process of law? We think not. The chief reason for the increased utilization of the income tax for raising revenue for government is that it is based upon ability to pay. In the case of use or privilege taxes, a leading consideration in making selection of subjects to be taxed is likewise ability of the ultimate payer of the tax to carry the burden. In passing the law requiring a tax from users of Diesel fuel, the Legislature had the right to consider the probability that those who had enjoyed the use of Diesel fuel, free from tax by reason of the invalidation of the act of 1935, had escaped payment of a just proportion of the expense of government. And without reference to the previous attempt to tax users of Diesel fuel, the Legislature may have considered and decided that those who had enjoyed the use of this particular type of motor fuel during the period here involved constituted a class of persons who were better able to pay some additional revenue required for carrying on the functions of state government than any other class within view of the Legislative eye. If the Legislature acted upon such a belief in either case in levying the tax herein questioned, it is not for the court to say that it was beyond the power of that body under our Constitution. The ability to bear the burden is everywhere recognized as a reasonable ground upon which to base a classification in tax measures.

"The subjects of every state ought to contribute to the support of the government as nearly as possible in proportion to the revenue

which they respectively enjoy under its protection." Adam Smith, "Wealth of Nations" Bk. 4, Ch. 2.

"Taxes imposed with reference to the ability of the person upon whom the burden is placed to bear the same have been levied from the foundation of the government. So, also, some authoritative thinkers, and a number of economic writers, contend that a progressive tax is more just and equal than a proportional one. In the absence of constitutional limitation, the question whether it is or is not is legislative and not judicial." *Knowlton* v. *Moore,* 178 U. S. 109, 20 S. Ct. 747, 774, 44 L. Ed. 969.

In conclusion we reiterate a statement heretofore 16,17 made by this court:

"It is too well settled to require more than passing mention that state Constitutions are mere limitations and not grants of powers. It is equally well settled that the power of taxation is a legislative function, and unless restrained by the Constitution the exercise of this power is vested in the Legislature and its power over the subject is plenary and supreme." *Salt Lake City* v. *Christensen Co.,* 34 Utah 38, 42, 95 P. 523, 525, 17 L. R. A., N. S., 898.

We hold that the tax in question does not violate the due process clause of either the State or Federal Constitutions, and that the judgment of the trial court should be and it is hereby affirmed. Costs to respondent.

WOLFE, C. J., and McDONOUGH and MOFFATT, JJ., concur.

LARSON, J., concurs in the result.

PRATT, J., on leave of absence.