**SALT LAKE CITY, a legal and political subdivision, Petitioner,**

v.

**TAX COMMISSION OF the STATE OF UTAH ex rel. MOUNTAIN STATES TELEPHONE AND TELEGRAPH CORP., Respondent.**

**SALT LAKE COUNTY, a legal and political subdivision, Petitioner,**

v.

**TAX COMMISSION OF the STATE OF UTAH ex rel. MOUNTAIN STATES TELEPHONE AND TELEGRAPH CORP., Respondent.**

Nos. 880249, 880250.

Supreme Court of Utah.

June 13, 1991.

Steven W. Allred, Salt Lake City, for Salt Lake City.

R. Paul Van Dam, Leon A. Dever, Mark K. Buchi, Richie D. Haddock, Salt Lake City, for Utah State Tax Com'n.

David E. Yocom, Karl L. Hendrickson, Bill Thomas Peters, Salt Lake City, for Salt Lake County.

ZIMMERMAN, Justice:

Plaintiffs Salt Lake City and Salt Lake County ("the City and County") petitioned for, and we granted, writs of review to consider an order of the Utah State Tax Commission ("the Commission"). That order denied the City and County's motion to intervene in proceedings brought by Moun-

tain States Telephone and Telegraph Company ("Mountain Bell") for a redetermination of a sales and use tax deficiency for 1983 through 1986 that had been fixed initially by Commission staff. After briefing was completed in the present case, the legislature effectively disposed of the underlying substantive taxation issue. Therefore, the taxation matter is moot. However, we address some of the other issues raised because of their importance and the likelihood that they may be raised again. *See Burkett v. Schwendiman*, 773 P.2d 42, 44 (Utah 1989); *State v. Davis*, 721 P.2d 894, 895 (Utah 1985); *Wickham v. Fisher*, 629 P.2d 896, 899–900 (Utah 1981).

Utah's Local Sales and Use Tax Act, Utah Code Ann. §§ 59–12–201 to 208 (1987), allows any county, city, or town to impose an additional sales and use tax up to ¾ percent on transactions already taxed by the state if certain requirements are met. *See* Utah Code Ann. § 59–12–204 (1987). The tax may be imposed only upon transactions already taxed by the state. Utah Code Ann. § 59–12–103 (1987). Thus, the local tax is referred to as a "piggyback" tax, i.e., a tax imposed only where a base state tax applies.

While this piggyback tax may be imposed only under very specific circumstances strictly regulated by the state, the tax is a local tax imposed by local government, not a state tax shared with local government. *See* Utah Code Ann. § 59–12–202 (1987). The tax is so designed because the Utah Constitution prohibits the state from sharing revenue with local governments. Utah Const. art. XIII, § 5. Thus, it is critical to its constitutionality that the tax be that of the local government and that the money belong to the local government. The Act requires, however, that administration be turned over to the Commission under contractual terms mandated by the statute. *See* Utah Code Ann. § 59–12–204(5) (1987).

Pursuant to this Act, both Salt Lake City and Salt Lake County have enacted local sales and use tax ordinances. Both localities have entered into statutorily mandated agreements with the Commission. The agreements permit authorized personnel from both localities to examine records and procedures concerning local collections and the records of taxpayers subject to such collections, although the agreements do not specify when such examinations may be inappropriate.[1]

On December 30, 1987, Commission staff issued Mountain Bell a notice of deficiency for $17,865,309.04 consisting of $12,629,-013.52 in sales and use taxes, penalties of $1,262,401.41, and interest of $3,987,894.11. The deficiency was for the period of January 1, 1983, through March 31, 1986, and included taxes for "carrier access charges." Carrier access charges are charges for telephone services which inter-exchange companies such as AT & T must purchase from local telephone network facilities in order to provide end-to-end telephone service. *See generally United States v. American Tel. & Tel. Co.*, 552 F.Supp. 131 (D.D.C. 1982), *aff'd, Maryland v. United States*, 460 U.S. 1001, 103 S.Ct. 1240, 75 L.Ed.2d 472 (1983) (ordering AT & T divestiture of Bell operating companies and resulting in local intra-exchange companies and larger inter-exchange companies). Such charges had been determined by Commission staff to be subject to sales and use tax pursuant to section 59–12–103 of the Utah Code. *See* Utah Code Ann. § 59–12–103 (1987). The amount of the proposed deficiency included an amount representing Salt Lake's local option sales and use tax.

After receiving notice of the alleged deficiency, Mountain Bell petitioned the Commission for a redetermination of the deficiency on December 31, 1987, and subsequently initiated settlement negotiations with the Commission. On April 8, 1988, before any settlement was concluded, both Salt Lake City and Salt Lake County filed separate motions to intervene in the rede-

---

1. The relevant provision of the contract provides:

    7. Records of the COMMISSION. The COMMISSION agrees to permit authorized personnel of the COUNTY to examine the records and precedures [sic] of the COMMISSION concerning the COUNTY tax collections and the records of taxpayers subject thereto.

termination proceedings.[2] Both parties filed motions for oral argument. Acting under the terms of its agreement with the Commission respecting the administration of the local option sales tax, Salt Lake County filed a request to review documents and records relevant to the assessment.

After hearing oral argument, the Commission entered an order on May 26, 1988, denying the motions to intervene. It stated that neither the City nor the County is legally entitled to participate in the proceeding and that the Commission would adequately protect their interests since the largest portion of any deficiency would go to the state. The Commission also denied Salt Lake County's request to review documents and records, reasoning that local governments enacting piggyback sales and use taxes were not entitled to access to confidential taxpayer information except as necessary to determine proper allocation of collected tax revenues to the local entities.

In June of 1988, the City and the County petitioned this court for writs of review which we issued to the Commission.

■ We first address Salt Lake County's argument that the Commission improperly denied it access to records dealing with the tax assessment. The contract entered into between Salt Lake County and the Commission, a statutorily mandated adhesion contract the terms of which are prescribed by section 59–12–204 of the Code, provides in part:

> The Commission agrees to permit authorized personnel of the County to examine the records and precedures [sic] of the Commission concerning the County tax collections and the records of taxpayers subject thereto.

The Commission argues that, despite the contract's apparent plain language granting the County access to the sought-after records, it is precluded by section 59–1–403(1) of the Code from revealing this information.

Section 59–1–403(1) states that the Commission may not divulge information gained from any return filed with the Commission. Utah Code Ann. § 59–1–403(1) (1987). Subsection 3(b) of the same section, however, provides:

> Notwithstanding Subsection (1) ... the commission may, by rule, share information gathered from returns and other written statements with the federal government, any other state, any of their political subdivisions, or any political subdivision of this state, if these political subdivisions or the federal government grant substantially similar privileges to this state.

Utah Code Ann. § 59–1–403(3)(b) (1987). Thus, it is readily apparent that subsection (1) is not intended to be an all-encompassing bar to disclosure of any information gathered from returns. The exemption in subsection (3) permits this information to be made available to virtually all federal and state political entities and makes it clear that there is no overriding legislative mandate to keep such information from local government. Under these circumstances, the bar to disclosure in section 59–1–403(1) cannot reasonably be read to bar the express authorization for disclosure contained in subsection (3) and incorporated into the adhesion contract that the Commission requires all local entities to sign if they want to enact a local option sales tax. The Commission expresses concern that if it complies with the County's request for disclosure, it will be unable to protect the confidentiality of the information given it by taxpayers, as contemplated by section 59–1–403(1). *See* Utah Code Ann. § 59–1–403(1) (1987). There are adequate means available to secure the confidentiality of the information while still making it available to local government. *See* Utah Code Ann. § 59–2–206 (1987). Under the plain terms of the contract, Salt Lake County should have been granted access to relevant records. The Commission erred in its flat denial of this request.

**2.** Administrative rule 861–05A–1(H) permits interested parties to move to intervene in proceedings before the Commission. Utah Admin.R. 861–05A–1(H) (1987) (current version at Utah Admin.R. 861–1–5A (1990)); *see also* Utah Admin.R. 861–04A (1987) (current revision at 861–1–4A (1990)).

We next address the City and County's argument that they were wrongfully denied intervention in the proceedings between the Commission and Mountain Bell. Both localities presented compelling arguments to support the contention that they have an interest in how their local tax is administered and how any liability for such tax is compromised and that their interest should give them a basis for intervening in such proceedings. However, Mountain Bell argues that the merits of the issue upon which the City and the County sought intervention have been mooted both by Commission Rule 865–19–90S (retroactive to July 1, 1988) and Senate Joint Resolution No. 12.[3] *See* Utah Admin.R. 865–19–90S (1990); S.J.Res. 12, 48 Leg., Gen.Sess., 1989 Utah Laws 1010.

■■■ Generally, the resolution of substantive issues renders an appeal moot. *See* 13A C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure* § 3533.2 (1984). As we have previously stated, "when the requested relief cannot affect the rights of the litigants," we deem the case moot. *Burkett v. Schwendiman*, 773 P.2d 42, 44 (Utah 1989). We recognize an exception to this doctrine when the issue presented is likely to recur yet evade review. *Id.; State v. Davis*, 721 P.2d 894, 895 (Utah 1986); *Wickham v. Fisher*, 629 P.2d 896, 899–900 (Utah 1981). Legislation can often moot a civil case, even where the legislation passes after the events have transpired in the case. Nothing in the United States or Utah Constitution prohibits retroactive legislation except as to ex post facto laws. U.S. Const. art. I, § 10, cl. 1; Utah Const. art. I, § 18; *Garrett Freight Lines, Inc. v. State Tax Comm'n*, 103 Utah 390, 397, 135 P.2d 523, 526 (1943). That exception pertains only to criminal matters. *Garrett*, 103 Utah at 397, 135 P.2d at 526.

■■■ Senate joint resolution No. 12 stated that it was the express intent of the legislature that if carrier access charges were ever determined to be subject to taxation, "such tax shall be imposed on a prospective basis only, and not retroactively." S.J.Res. 12, 48 Leg.Gen.Sess., 1989 Utah Laws 1010. The administrative rule, promulgated by the Commission shortly after the joint resolution passed, attempted to further define the taxability of certain telephone services, but the rule was made retroactive only to July 1, 1988, a few months after the relevant events in this case. *See* Utah Admin.R. 865–19–90S (1990). The Senate joint resolution was apparently intended to decide issues involved in this case.

We find that the rule and resolution, in and of themselves, did not moot the taxation issue. A joint resolution does not have force of law, *see* 1A Sutherland, *Statutory Construction* §§ 29.04–.08 (4th ed. 1985), and the administrative rule promulgated by the Commission did not necessarily decide this case even assuming it decided the taxation issue from July 1, 1988, its effective date.

■■■ Apparently, the legislature was persuaded not to let the matter rest with the passage of the resolution and the rule. It addressed the issue again in the 1990 general session when it passed S.B. 17 after briefing in this case was complete. That statute makes exempt "until July 1, 1999, amounts paid for purchase of telephone service for purposes of providing telephone service." S.Res. 17, 48 Leg., Gen.Sess., 1990 Utah Laws 45. The Bill also stated:

It is the intent of the Legislature that the changes to the tax laws provided by

---

**3.** The joint resolution of the legislature proposed that the Commission and telecommunications providers study the issues and make proposals to the legislature's revenue and taxation interim committee and that the committee in turn make its recommendation to the 1990 legislature. The resolution further provided:

BE IT FURTHER RESOLVED that no matter what the committee recommends and no matter what the State Tax Commission policy is, whether stated by rule or otherwise, it is

the express intent of the Legislature that if either or both interstate telecommunications or carrier access is taxed, such tax shall be imposed on a prospective basis only, and not retroactively.

BE IT FURTHER RESOLVED that this resolution does not impact tax payments that are currently being collected.

S.J.Res. 12, 48 Leg.Sess., Gen.Sess., 1989 Utah Laws 1010.

this act be construed as a technical change only, with the sole purpose of recognizing in statute tax policy as it existed regarding interstate retail long distance charges and carrier access charges upon the passage of Senate Joint Resolution 12 at the 1989 General Session.

*Id.* Thus, the legislature effectively adopted that portion of the prior joint resolution dealing with tax policy concerning carrier access charges as part and parcel of the new law. This bill was clearly designed to decide the merits of the underlying tax liability presented in this case and, we conclude, does in fact dispose of the substantive taxation issue, although it does not decide the intervention question.

The question of intervention would seem, at first glance, to be likely to recur yet evade review and would therefore be reviewable as an exception to the mootness doctrine. *See Burkett v. Schwendiman*, 773 P.2d 42, 44 (Utah 1989); *State v. Davis*, 721 P.2d 894, 895 (Utah 1986); *Wickham v. Fisher*, 629 P.2d 896, 899–900 (Utah 1981). This is because the Commission may settle any case in which localities attempt to intervene, hoping to moot the substantive issue along with the intervention issue, while never having to address either. However, because most future cases will likely be subject to the provisions of the UAPA, which does not apply to this case,[4] a decision on intervention here would have little precedential value.

Remanding for further proceedings in this case would be a futile gesture because the Commission would be bound by the legislature's recent enactment to determine

that there was no tax deficiency. Therefore, we conclude that the taxation issue is moot and hold simply that Salt Lake County was entitled to access to the relevant records.

HALL, C.J., HOWE, Associate C.J., and DURHAM, J., concur.

STEWART, J., concurs in the result.

---

**4.** The provision in the Utah Administrative Procedure Act ("UAPA") governing intervention in formal adjudicative proceedings, section 63–46b–9(2) (1989) of the Code, would appear to require that the Commission grant intervention to the City and the County. That provision states:

(2) The presiding officer shall grant a petition for intervention if he determines that:
(a) the petitioner's legal interests may be substantially affected by the formal adjudicative proceeding; and

(b) the interests of justice and the orderly and prompt conduct of the adjudicative proceedings will not be materially impaired by allowing the intervention.

Utah Code Ann. § 63–46b–9(2) (1989). However, that provision does not apply to this case. The UAPA, by its own terms, was made applicable January 1, 1988. The "proceeding" in this case was initiated December 31, 1987.